**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LISLEY SESSER,<br>4052 Plantation Lake<br>Columbus, OH 43211,<br><br>                Plaintiff,<br><br>v.<br><br>RBS COLUMBUS, LLC<br>*DBA* RODIZIO GRILL,<br>c/o Kelly Chaposky, Registered Agent<br>7867 Meadow Chase Dr.<br>Sunbury, OH 43074,<br><br>   and<br><br>GEORGE J. CHAPOSKY,<br>7867 Meadow Chase Dr.<br>Sunbury, OH 43074,<br><br>   and<br><br>VERNON K. DUNN,<br>415 43rd Ave. North<br>Myrtle Beach, SC 29577,<br><br>   and<br><br>JACOB D. SZAFARSKI,<br>888 Thurber W. Dr., Apt. D<br>Columbus, OH 43215,<br><br>                Defendants. | CIVIL ACTION NO.<br><br>JUDGE<br><br>MAGISTRATE JUDGE<br><br><br><br>**JURY DEMAND ENDORSED HEREON** |

**COMPLAINT**

### I. INTRODUCTION

1. This action seeks compensatory and punitive damages; declaratory, injunctive, and equitable relief; pre-judgment and post-judgment interest; and costs and attorneys' fees for sex

discrimination in the form of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and the Ohio Laws Against Discrimination, R.C. 4112; and negligent supervision and retention, committed when Defendant RBS Columbus, LLC *dba* Rodizio Grill, failed to take prompt remedial action in response to complaints from Plaintiff and other female employees of sexual harassment by Supervisor Richard Dos Santos, ultimately leading to his rape of Plaintiff, because (1) Defendant RBS Columbus, LLC: failed to cure instances of severe or pervasive sexual harassment committed by Supervisor Dos Santos for which it was on notice, culminating in a hostile work environment; failed to act to keep Plaintiff safe from sexual harassment by Supervisor Dos Santos, who it knew, from prior complaints, had propensities to sexually harass women in such a severe or pervasive manner that the risk of him committing a sexual assault was reasonably foreseeable to it; and/or negligently supervised and retained Supervisor Dos Santos after becoming aware of his propensities for sexual harassment and risk of committing a rape or sexual assault; (2) individual Defendants, Rodizio's Owners, Greg Chaposky and Vernon Dunn, and Rodizio's General Manager, Jacob Szafarski, aided and abetted unlawful sex discriminatory practices by failing to cure known instances of severe or pervasive sexual harassment.

## II. JURISDICTION AND VENUE

2. Plaintiff brings sex discrimination claims for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Ohio Laws Against Discrimination; and negligence under the common law of the State of Ohio.

3. This Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

4. Based on a timely-filed charge affidavit, Plaintiff received a Right-to-Sue Letter from the Equal Employment Opportunity Commission less than 90 days ago.

5. Declaratory, injunctive, and equitable relief are sought pursuant to 28 U.S.C. §§ 2201; 2202, and the common law of the State of Ohio.

6. Compensatory and punitive damages may be awarded under Title VII; the Ohio Laws Against Discrimination; and the common law of the State of Ohio.

7. Costs and attorneys' fees may be awarded pursuant to the 42 U.S.C. § 1988; Title VII, 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54; and the common law of the State of Ohio.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the adverse actions leading to Plaintiff's claims arose in and around Franklin County, Ohio, where Defendants employed Plaintiff at all times material to this Complaint.

### III. **PARTIES**

9. Plaintiff Lisley Sesser is a female resident of Columbus, Ohio.

10. Defendant RDS Columbus, LLC, is a limited liability company incorporated in the State of Ohio doing business as "Rodizio Grill," which is a franchised Brazilian Steakhouse located in Columbus, Ohio that is a part of a Delaware corporation, Rodizio Restaurants International, Inc.; employs more than fifteen employees; is owned by franchisees, Defendants George Chaposky and Vernon Dunn; and, at all times material to this Complaint, employed Plaintiff as a server in a full-time, W-2 capacity.

11. Defendant George Chaposky is a franchise owner and managing member of Defendant Rodizio Grill; has been in the restaurant industry since approximately 2008; became a franchisee with Rodizio Grill in early 2012; franchises, owns, and/or operates several restaurants

in Ohio and Colorado; and, at all times material to this Complaint, employed Plaintiff as a server and Richard Dos Santos as a supervisor in a full-time, W-2 capacity.

12. Defendant Vernon Dunn is a franchise owner and managing member of Defendant Rodizio Grill; has been in the restaurant industry since 1996; became a franchisee with Rodizio Grill, opening in early 2012; franchises, owns, and/or operates several restaurants in Ohio and North Carolina; and, at all times material to this Complaint, employed Plaintiff as a server and Richard Dos Santos as a supervisor in a full-time, W-2 capacity.

13. Defendant Jacob Szafarski is the general manager of Rodizio Grill in Columbus, Ohio; has been in this position since February 2013; made the decision to promote Richard Dos Santos to a supervisory position; and, at all times material to this Complaint, managed the day-to-day operations of Rodizio, including responding to complaints about misconduct, counseling or discipling employees, and exercising extensive discretion delegated by the owners of Rodizio Grill over employment practices and policies, where Plaintiff worked as a server in a full-time, W-2 capacity.

**IV. FACTS**

14. Plaintiff Lisley Sesser ("Ms. Sesser") began working for Defendants at Rodizio Grill in Columbus, Ohio as a server around July 2021.

15. Upon her hire, Ms. Sesser's direct supervisors included Richard Dos Santos and Jackson Shewmaker.

16. Ms. Sesser's first impression of Supervisor Dos Santos was that he was friendly and generally informal with all of the female servers, including herself.

17. However, about a month into her employment, Ms. Sesser started noticing that Supervisor Dos Santos often acted inappropriately towards her and other female employees, including being overly physical with them.

18. For example, Supervisor Dos Santos would give her and other female employees unsolicited hugs, stand extremely close to them, and go out of his way to touch her and the other female servers through calculated maneuvers under the guise of work-related interactions.

19. Supervisor Dos Santos also regularly subjected Ms. Sesser and the other women he supervised to inappropriate conversations that were sexual in nature, such as explicit narratives about his past sexual "conquests," including boasting about taking the virginity of his prior partners.

20. Ms. Sesser was extremely uncomfortable when he brought up these subjects and did not engage in these conversations, often ignoring him or leaving when he attempted to talk to her about sexual activities or women.

21. Over the next couple months, Supervisor Dos Santos' inappropriate behaviors only escalated in frequency and severity.

22. Supervisor Dos Santos regularly sexualized the women he supervised, including Ms. Sesser, by commenting on their bodies and/or other physical features and how he found them attractive.

23. Around December of 2021, Supervisor Dos Santos started sending Ms. Sesser frequent inappropriate text messages about his and another male co-worker's "sexual adventures" with women and other sexually explicit topics, including making unwelcome sexual advances towards her.

5

24. In a series of text messages to Ms. Sesser, Supervisor Dos Santos described himself masturbating in gross detail and invited Ms. Sesser to come to his apartment.

25. He also asked her questions about the type of sexual activities that she preferred and similar topics.

26. Given Supervisor Dos Santos' status as her direct supervisor and the clear power dynamics at play, Ms. Sesser feared upsetting him in a way that would lead to her termination, negative performance evaluations, and/or burdensome and unfair additional duties or schedules, so she would attempt to brush off these topics with quick responses or non-responses and attempt to divert his attention to different subjects.

27. However, even though it was clear that she was uninterested, Supervisor Dos Santos relentlessly persisted in inviting Ms. Sesser to meet him at his apartment late at night.

28. When she declined his invitations, often making excuses as to why she could not hang out with him, Supervisor Dos Santos emphasized how "serious" he was about wanting her to come over and continued to invite her over on several occasions.

29. Despite Ms. Sesser repeatedly declining his sexual advances and redirecting conversations away from explicit topics, Supervisor Dos Santos continued to pursue her and press her to respond to his texts about sex.

30. Around the same time that Supervisor Dos Santos escalated his inappropriate conduct towards Ms. Sesser to unsolicited sexually explicit text messages, another server, Julia, approached her at work and revealed that she had been experiencing increasingly inappropriate behaviors from him as well that made her very uncomfortable.

31. Julia confided in Ms. Sesser that Supervisor Dos Santos really "weirded her out," explaining that he would often touch her hands, get too close to her, and lean in very close to her body when speaking to her.

32. Ms. Sesser agreed that Supervisor Dos Santos' behavior was weird and inappropriate, and that he was acting in a similar manner towards her, which made her uncomfortable.

33. Not long after, in January 2022, a second female server, Cori, told Ms. Sesser similar information, specifically that Supervisor Dos Santos really "grossed her out" and gave an example of an inappropriate comment he made to her on shift, that he "wanted to stick his finger in her pussy," and that she too was quite uncomfortable around him, for obvious reasons.

34. Ms. Sesser was shocked by the egregious nature of this comment, which only solidified her concerns that Supervisor Dos Santos was escalating his inappropriate behavior.

35. Supervisor Dos Santos openly talked to Ms. Sesser and others about the other women working at Rodizio in a sexual manner, like telling her that he knew one of her female co-workers "likes hard cock," and telling Cori that he "wanted to bend her over the counter."

36. He also revealed to Ms. Sesser that he frequently used the meat queue, an ordering system used by Defendant Rodizio to line up food orders for preparation by the kitchen, to signal to a couple of the other women working there that he was ready to have sex with them, inviting them to engage in sexual activities with him during or after their shifts.

37. Around this same time, Supervisor Dos Santos started regularly talking about his genitals in conversations with Ms. Sesser and the other women servers at Rodizio, including describing his penis size to them in detail, frequently saying things about his "pent up frustrations," "big dick," and "big balls."

7

38. He also told another female server, Courtney, that she "should sleep with someone," and often made similar comments to other women about how he thought they should be engaging in more sexual activities.

39. None of the women invited these conversations, and all were outwardly uncomfortable at work, but Supervisor Dos Santos continued to talk to them about sexual topics, his own genitals, and his sexual desires, which often included them as the subjects of such fantasies.

40. Julia again approached Ms. Sesser about Supervisor Dos Santos' egregious behavior during this timeframe and alerted her that he rubbed his body against her while passing her in the restaurant, exclaiming, "Excuse me, I rubbed my hard cock against you."

41. At this point, Ms. Sesser realized that rebuffing and ignoring Supervisor Dos Santos' harassment was not going to be enough to prevent him from feeling emboldened to escalate his misconduct; however, she still feared retaliation and adverse actions if she reported him.

42. Ms. Sesser discussed with Cori and Julia about how to alert a superior about Supervisor Dos Santos' inappropriate behavior since they all agreed they were too uncomfortable to keep being subjected to it on a near-daily basis, but they were all similarly afraid of adverse consequences in coming forward, especially because Supervisor Dos Santos was a long-tenured employee and appeared to be close with Rodizio's General Manager, Jake Szafarski.

43. Ultimately, around January 2022, Ms. Sesser reported Supervisor Dos Santos' conduct to Rodizio's Assistant Manager, Jack Pickerel, disclosing that he had been making inappropriate comments to her and the other women servers and going out of his way to touch them and rub up against them.

44. Ms. Sesser explained that she was uncomfortable telling GM Szafarski herself, and Mr. Pickerel asked if she wanted him to report it to him on her behalf.

45. Ms. Sesser confirmed that she wanted Mr. Pickerel to tell GM Szafarski about Supervisor Dos Santos' harassment towards her and the others.

46. Shortly thereafter, Mr. Pickerel informed Ms. Sesser that he reported Supervisor Dos Santos' conduct that she described to him to GM Szafarski, who simply "dismissed" the concerns and told Mr. Pickerel that no action needed to be taken because Ms. Sesser's report was "all hearsay."

47. Upon information and belief, Cori also reported Supervisor Dos Santos' inappropriate behavior to management.

48. No action was taken, and Supervisor Dos Santos' conduct continued.

49. In February 2022, Supervisor Dos Santos was off work for an extended period, leading Ms. Sesser to believe that he had either quit or otherwise been disciplined at some point, as rumors began circling with no official explanation provided for his absence.

50. However, Ms. Sesser later learned from another employee that Supervisor Dos Santos was on medical leave and was expected to return, causing her great stress and anxiety at the prospect of working with him again after having reported him.

51. Supervisor Dos Santos then returned to work on March 2, 2022, with his first shift back scheduled as the closing manager, on the same day that Ms. Sesser was scheduled as the closing server.

52. Upon his return, Ms. Sesser became increasingly anxious about having to close with him by herself due to his inappropriate texts, comments, and behavior.

53. Because she was so uncomfortable with being alone with Supervisor Dos Santos, she requested that her co-worker, Elizabeth Munns, stay with her while she was closing that night.

54. Ms. Munns agreed and stayed with Ms. Sesser through her closing shift, free employee post-shift dinner (which, per company policy, must be eaten at the restaurant for the meal to be free), and they left together towards their vehicles in a nearby parking garage without Supervisor Dos Santos.

55. As Ms. Sesser left, he asked her, "Aren't you coming to the garage with me?"

56. She declined, explaining she had plans with Ms. Munns and had to leave.

57. On March 3, 2022, Ms. Sesser was again working a late closing shift with Supervisor Dos Santos.

58. She again asked Ms. Munns to stay with her, but she could not stay the whole time that night due to her own plans.

59. Ms. Munns unintentionally said she would not be able to stay in front of Supervisor Dos Santos, who then became aware that Ms. Sesser would be closing with him alone.

60. Ultimately, Ms. Munns stayed as late as she could and urged Ms. Sesser to let her know when she made it home safe.

61. Like every other shift, Ms. Sesser stayed a couple extra minutes to grab her employee dinner, provided to her at no charge by Rodizio, but only if she ate it at the restaurant before leaving.

62. Ms. Sesser, well aware that she was then alone with Supervisor Dos Santos in the restaurant, asked him if she could have to-go boxes for her food just this once, but he declined.

63. Supervisor Dos Santos stayed with her, watching Ms. Sesser eat without having a meal himself, while attempting to discuss sexual topics with her and making explicit comments.

64. Around 11:00 p.m., Ms. Sesser hurried to leave, explaining she had to go, and Supervisor Dos Santos replied that he had a "hard on."

65. As Ms. Sesser left, he insisted that he needed to walk her out to the garage, even though she assured him that she would be fine walking to her car by herself.

66. Upon reaching the alley outside of Rodizio leading to the garage where their vehicles were parked, to Ms. Sesser's shock and horror, Supervisor Dos Santos exposed himself to her, pulling out his penis in her presence.

67. He insisted that she "just touch" him, repeating, "just touch it."

68. Ms. Sesser said no, repeatedly.

69. However, Ms. Sesser's clear lack of consent did not stop Supervisor Dos Santos from grabbing and pulling her arm towards him and forcing her hand on his penis.

70. She continued to say "no," many times, as he forced her to rub his genitals.

71. Ms. Sesser eventually managed to free herself from Supervisor Dos Santos' forceful grasp and started running as fast as she could to her car.

72. Supervisor Dos Santos chased her down, running into the garage after her, stating, "we need two minutes in the van."

73. He pushed her against the van and pulled down his pants, demanding that Ms. Sesser "just put her mouth there," while she repeatedly said "no," she would not.

74. Supervisor Dos Santos overpowered her and forced her head down to his penis, forcing himself into her mouth over her repeated objections that she did not want to do so.

75. Point blank, Supervisor Dos Santos raped Ms. Sesser.

76. Ms. Sesser ultimately got into her car after Supervisor Dos Santos raped her.

11

77.     As she was sitting in her car, Supervisor Dos Santos continued to bother her from outside the window, asking if she was "sure that she didn't want to do this," to which she emphasized again that she did not.

78.     Ms. Sesser then left, texting and, later, calling Ms. Munns to seek her support and guidance, who invited her to come to her house so as to not be alone; however, Ms. Sesser ultimately decided to go home and take a shower.

79.     After Supervisor Dos Santos raped Ms. Sesser, he texted her, stating, "I'm still hard" and included a laughing emoji.

80.     Ms. Sesser told him, "You need to go to bed," to avoid having to talk to him further.

81.     Ms. Sesser remained at home that evening, crying through the night, completely unable to sleep.

82.     During her next shift, Ms. Sesser again worked with Supervisor Dos Santos.

83.     Throughout the shift, he followed her around the restaurant closely, remaining near her as much as possible, to the point where she could not catch a free moment away from him.

84.     When she finally had the opportunity, Ms. Sesser confided in the shift's Lead Server that Supervisor Dos Santos had assaulted her the night before.

85.     The Lead told Ms. Sesser that he would tell GM Szafarski.

86.     After that, GM Szafarski instructed Ms. Sesser to go outside where they could talk privately, and she explained everything that Supervisor Dos Santos did to her the night before.

87.     GM Szafarski replied that he "hated" Supervisor Dos Santos.

88.     Following their conversation, GM Szafarski terminated Supervisor Dos Santos that same evening.

89. Ms. Sesser learned later that Supervisor Dos Santos admitted to his misconduct when confronted by GM Szafarski.

90. Following his departure, Ms. Sesser remained on shift, having frequent emotional breakdowns in the freezer, which continued through the next week, when she was scheduled to work a lot of overtime because of the Arnold Classic event happening nearby.

91. Ms. Sesser also faced backlash from one of Supervisor Dos Santos' friends who worked in Rodizio's kitchen, who taunted her about how "Richard sends his best," threatened to wait for her after their shift ended, and attempted to spread rumors that Ms. Sesser was "making it all up" with respect to him raping her.

92. Ms. Sesser reported this co-worker to management to no avail.

93. Following his termination, Supervisor Dos Santos texted Ms. Sesser an attempted apology in Portuguese, beginning with, as translated to English, "You know why I'm writing this. I didn't think anything we talked about outside of work would hurt us but it did."

94. His messages also included telling her "sorry" about two to three times and asked that she "keep it between them what they did."

95. Ms. Sesser did not respond and provided these messages to the Columbus Police following her report to them on March 7, 2022, which is still considered to be under investigation.

96. Ms. Sesser also went to the hospital for a rape kit shortly after she was raped by Supervisor Dos Santos, but because she had already showered and brushed her teeth, the kit was ultimately inconclusive.

97. Meanwhile, Ms. Sesser continued to work for Rodizio even though the stress of this event caused her significant emotional distress, for which she started, close in time to the rape, and still attends, and needs, weekly trauma therapy appointments designed for survivors of rape.

13

98. In July of 2022, Rodizio hired a new female server, Michelle LNU, who ended up touching Ms. Sesser inappropriately on her side without her consent during a shift; this non-consensual touch triggered Ms. Sesser's traumatic memories involving Supervisor Dos Santos, and she reported it to Mr. Pickerel and GM Szafarski the same day it occurred, but no action was taken in response.

99. In November of 2022, Ms. Sesser ultimately resigned because she could no longer return to the restaurant without being reminded of this deeply traumatic experience.

100. Supervisor Dos Santos' behavior was well known to both staff, management, and Rodizio's owners, Defendants Chaposky and Dunn.

101. Prior to his sexual harassment and rape of Ms. Sesser, Defendants were aware that Supervisor Dos Santos sexually harassed several other female employees during his time with Rodizio, yet Defendants failed to take any action against him; instead, they promoted him to a supervisory position.

102. For example, a former female server, Grace, who worked for Rodizio from 2019 to 2020, reported inappropriate behavior by Supervisor Dos Santos to GM Szafarski, including that he was overly flirtatious with her and made comments about her "attempting to sleep with the entire Columbus Blue Jackets team" when he was her direct supervisor; GM Szafarski took no action in response.

103. Defendants were also aware of Supervisor Dos Santos' inappropriate behavior by virtue of Ms. Sesser's January 2022 complaint to Assistant Manager Pickerel, who ultimately reported it to GM Szafarski, who then, upon information and belief, alerted Defendants Chaposky and Dunn.

104. Despite knowing of Supervisor Dos Santos' propensity to sexual harass women and, as evidenced by reports of him touching them without their consent, the risk that he may escalate that behavior to criminal sexual assault and rape, Defendants still failed to take any remedial action that would have kept Ms. Sesser and her female peers safe from the sexual harassment they were forced to endure by Supervisor Dos Santos.

105. Defendants' failure to act promptly in response to complaints about Supervisor Dos Santos' sexually harassing conduct aided and abetted his unlawful sexual harassment of Ms. Sesser and other women he supervised and/or worked with.

106. Defendants' lack of action against Supervisor Dos Santos after learning of his unlawful behavior resulted in him having, and taking, the opportunity to rape Ms. Sesser.

107. Defendants' actions and inactions were wanton, willful, reckless, in bad faith, and in knowing violation of Ms. Sesser's rights to be free from workplace discrimination and harassment based on sex.

## V. CLAIMS FOR RELIEF

### A. Count I: Sex Discrimination under Title VII of Civil Rights Act of 1964

108. The preceding paragraphs are hereby incorporated and re-alleged.

109. By failing to promptly remedy a hostile work environment based on sex created by the known severe and pervasive sexually harassing behavior of Plaintiff's direct supervisor, Richard Dos Santos, thereby enabling him to sexually assault and rape Plaintiff, Defendant Rodizio violated Title VII of the Civil Rights Act of 1964.

### B. Count II: Sex Discrimination under the Ohio Laws Against Discrimination.

110. The preceding paragraphs are hereby incorporated and re-alleged.

111. By failing to promptly remedy a hostile work environment based on sex created by the known severe or pervasive sexually harassing behavior of Plaintiff's direct supervisor, Richard Dos Santos, thereby enabling his continued harassment, non-consensual touching, and rape of Plaintiff, Defendant Rodizio violated the Ohio Laws Against Discrimination.

112. By failing to promptly remedy a hostile work environment based on sex created by the known severe or pervasive sexually harassing behavior of Plaintiff's direct supervisor, Richard Dos Santos, thereby aiding and abetting Supervisor Dos Santos' unlawful discriminatory practices through enabling his continued harassment, non-consensual touching, and rape of Plaintiff, Defendants Chaposky, Dunn, and Szafarski violated the Ohio Laws Against Discrimination, R.C. 4112.02(J).

C. **Count III: Negligent Supervision and Retention under the Common Law of the State of Ohio**

113. The preceding paragraphs are hereby incorporated and re-alleged.

114. By negligently supervising and retaining Richard Dos Santos after becoming aware of multiple sexual harassment complaints made against him by current and/or former employees, including Plaintiff's complaint in January 2022, thereby giving them adequate notice of his propensity for sexual harassment and/or sexual assault, Defendants proximately caused Plaintiff's injuries in violation of the common law of the State of Ohio.

VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. a declaration that Defendants violated Title VII and/or the Ohio Laws Against Discrimination by committing sex discrimination in failing to remedy sexual harassment and recklessly allowing its supervisor rape Plaintiff;

B. a declaration that committed Defendants committed negligent supervision and retention under the common law of the State of Ohio by recklessly allowing its

16

        agent-employee, Richard Dos Santos, to sexually harass and rape Plaintiff with knowledge of his propensities to engage in that conduct;

C.     equitable relief as will make Plaintiff whole for Defendants' unlawful conduct;

D.     compensatory and punitive damages in an amount exceeding $25,000;

E.     pre-judgment and post-judgment interest;

F.     costs and reasonable attorneys' fees; and

G.     such other relief as the Court deems fair and equitable.

                                        Respectfully submitted,

                                        By: /s/ *Madeline J. Rettig*
                                        Madeline J. Rettig (0098816)
                                        *(mrettig@marshallforman.com)*

**OF COUNSEL:**                 John S. Marshall (0015160)
Louis A. Jacobs (002101)       *(jmarshall@marshallforman.com)*
(*LAJOhio@aol.com*)            Edward R. Forman (0076651)
177 19th St., Apt. 9C            *(eforman@marshallforman.com)*
Oakland, CA 94612             Samuel M. Schlein (0092194)
(614) 203-1255                  *(sschlein@marshallforman.com)*
Fax (614) 463-9780             Helen M. Robinson (0097070)
                                        *(hrobinson@marshallforman.com)*
                                        MARSHALL FORMAN & SCHLEIN LLC
                                        250 Civic Center Dr., Suite 480
                                        Columbus, Ohio 43215-5296
                                        (614) 463-9790
                                        Fax (614) 463-9780

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and defenses triable to a jury.

                                        By: /s/ *Madeline J. Rettig*
                                        Madeline J. Rettig (0098816)